## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICHARD DOE, individually and as guardian for A.B., C.D., and E.F.; A.B., a minor child; C.D., a minor child; E.F., a minor child, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. No. 15-963-LPS |
| STATE OF DELAWARE, DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH & THEIR FAMILIES, DIVISION OF FAMILY SERVICES; SARAH MARLOWE, individually and in her official capacity; BAHU GILLIAM, individually and in her official capacity; CHILDREN'S ADVOCACY CENTER OF DELAWARE; THE CITY OF WILMINGTON, a municipal corporation of the State of Delaware; THE CITY OF WILMINGTON POLICE DEPARTMENT; MARY QUINN, individually and in her official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Katherine R. Witherspoon, Paula Witherow, Anthony N. Delcollo, G. Kevin Fasic, COOCH AND TAYLOR P.A., Wilmington, DE.
> Attorneys for Plaintiffs.

Rosamaria Tassone-DiNardo, First Assistant City Solicitor, CITY OF WILMINGTON LAW DEPARTMENT, Wilmington, DE.
> Attorney for Defendants The City of Wilmington; The City of Wilmington Police Department; and Mary Quinn.

Ryan P. Connell, Deputy Attorney General, DEPARTMENT OF JUSTICE, STATE OF DELAWARE, Wilmington, DE.
> Attorney for Defendants State of Delaware, Department of Services for Children, Youth & Their Families, Division of Family Services; Sarah Marlowe; and Bahu Gilliam.

Gary H. Kaplan, Art C. Aranilla, MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, Wilmington, DE.
> Attorneys for Defendant Children's Advocacy Center of Delaware.

### **MEMORANDUM OPINION**

September 27, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.    INTRODUCTION[1]

Richard Doe and his minor children, A.B., C.D., and E.F. ("Plaintiffs"), have filed suit

against: (1) the State of Delaware, Department of Services for Children, Youth & Their Families,

Division of Family Services ("DFS"); (2) Sarah Marlowe, a Family Crisis Therapist employed by

the DFS; (3) Bahu Gilliam, an Investigation Supervisor employed by the DFS; (4) the Children's

Advocacy Center of Delaware ("CAC"); (5) the City of Wilmington ("the City"); (6) the City of

Wilmington Police Department ("WPD"); and (7) Mary Quinn, a police officer with the WPD

("Defendants").[2]  (*See* D.I. 15)  Plaintiffs allege seven counts: (i) defamation against the DFS,

Marlowe, the WPD, and Quinn; (ii) negligence against Marlowe and the CAC; (iii) malicious

prosecution against the DFS, Marlowe, the WPD, and Quinn; (iv) wrongful use of civil

proceedings against the DFS and Marlowe; (v) deprivation of civil rights under 42 U.S.C. § 1983

against all Defendants except the CAC; (vi) civil conspiracy to commit malicious prosecution

against the CAC; and (vii) breach of contract against all Defendants.  (*Id.* at ¶¶ 69-125)  The

Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a).

Before the Court are three motions to dismiss, filed by the City Defendants, the State

Defendants, and the CAC.  (D.I. 18, 22, 26)  For the reasons set forth below, the Court will grant

Defendants' motions to dismiss.

---

[1]Unless otherwise indicated, all facts are taken from supporting briefs submitted by the parties and the case record.

[2]The DFS, Marlowe, and Gilliam are hereinafter referred to as the "State Defendants," while the City, WPD, and Quinn are hereinafter referred to as the "City Defendants."

## II.    BACKGROUND

Plaintiff Doe and his ex-wife separated in August 2012.  (D.I. 15 at ¶ 28)  Doe moved out

of their shared residence and retained full-time custody of their three minor children pursuant to

an agreement with his ex-wife.  (*Id.*)

In December 2012, Doe and his ex-wife filed cross-petitions for custody.  (*Id.* at ¶ 30)

Doe agreed to give her full custody on September 13, 2013, at a hearing in Delaware Family

Court.  (D.I. 15 at ¶ 34; D.I. 20-4 at 73)

On September 19, 2013, Doe filed a "Protection from Abuse" petition, and the next day

he contacted the WPD, accusing his ex-wife of abusing their children.  (D.I. 15 at ¶¶ 32-33)  The

WPD took a police report and contacted the DFS.  (D.I. 19 at 2)  On October 7, 2013, Doe again

contacted the WPD and called the DFS hotline.  (D.I. 15 at ¶ 35)  The WPD took another police

report and again contacted the DFS.  (D.I. 19 at 2)

In response to these reports, Mary Quinn, a police officer with the WPD, interviewed Doe

on October 15, 2013.  (D.I. 15 at ¶ 38)  The CAC interviewed the children on October 22, 2013,

and Quinn interviewed Doe's ex-wife on October 23, 2013.  (*Id.* at ¶¶ 39, 44)  A friend and

neighbor of Doe's ex-wife was allowed to assist her during the interview, which Plaintiffs allege

violated CAC and WPD protocol.  (*Id.* at ¶ 44)

Quinn concluded that Doe's allegations were unfounded and that he appeared to have

coerced the children's statements.  (D.I. 19 at 2)  She subsequently closed her investigation.  (*Id.*)

On October 10, 2013, Doe filed a Petition to Modify Custody in Family Court.  (D.I. 15 at

¶ 36)  His ex-wife filed an answer on November 11, 2013, attaching an affidavit from Sarah

Marlowe of the DFS.  (*Id.* at ¶¶ 51-52)  The affidavit stated that Marlowe had observed the

interviews of Doe's children and that Doe appeared to have fed them false information about their mother's alleged conduct.  (*Id.*)

On November 21, 2013, the DFS sent Doe a Notice of Intent to Substantiate for Abuse and Neglect and Place on Child Protection Registry.  (*Id.* at ¶ 53)  This was based on a determination that Doe had emotionally neglected his children by encouraging them to lie at their interviews.  (*Id.*; D.I. 23 at 4)  The Notice was signed by Marlowe and her supervisor at the DFS, Bahu Gilliam.  (D.I. 23 at 4)

On December 9, 2013, the DFS filed a Petition for Substantiation in Family Court.  (D.I. 15 at ¶ 54)  At the substantiation hearing on March 25, 2014, Marlowe testified that she had not observed the children's interviews in real time, but that she did possess the transcripts and that another DFS employee had attended and documented the interviews.  (*Id.* at ¶¶ 59-60; D.I. 23 at 5)

On April 2, 2014, the Family Court dismissed the substantiation petition against Doe, finding no prima facie case that he had engaged in abuse or neglect.  (D.I. 15 at ¶ 63; D.I. 23 at 5)  However, the Family Court noted that "[a parent's] motive[s] for reporting past incidents of domestic violence just before a custody transfer are suspect."  (D.I. 23 at 5)  Doe alleges that the Family Court continues to deny him custody based on Marlowe's affidavit and the substantiation proceeding brought against him.  (D.I. 15 at ¶ 65)

On October 23, 2015, Plaintiffs filed suit in the District of Delaware.  They filed an Amended Complaint on February 22, 2016.  (D.I. 15)  Defendants have filed motions to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  (D.I. 18, 22, 26)  The Court heard oral argument on the motions on

July 7, 2016.  (*See* Transcript ("Tr."))

## III.   LEGAL STANDARDS

Evaluating a motion to dismiss under Rule 12(b)(6) requires the Court to accept as true

all material allegations of the complaint.  *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to

offer evidence to support the claims."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,

1420 (3d Cir. 1997) (internal quotation marks omitted).  Thus, the Court may grant such a

motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true,

and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief."  *Maio*

*v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a

right to relief above the speculative level on the assumption that the allegations in the complaint

are true (even if doubtful in fact).'"  *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation

that discovery will reveal evidence of [each] necessary element of a plaintiff's claim."  *Wilkerson*

*v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation

marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion*

*Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported

conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false." *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## IV.    DISCUSSION

For the reasons stated below, the Court will grant Defendants' motions to dismiss.

### A.    Consideration of Documents Outside the Pleadings

As an initial matter, the Court finds it appropriate to consider all of the documents in the City Defendants' Appendix (*see* D.I. 20) without converting the motions to motions for summary judgment.  Although courts generally consider only the complaint, exhibits, and matters of public record in adjudicating a motion to dismiss, an undisputedly authentic document attached to the motion which forms the basis of a plaintiff's claim may be considered without converting to a summary judgment motion.  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  A document forms the basis of a claim if it is "integral to or explicitly relied upon in the complaint."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  The allegations in the complaint must be based on the document; but the document does not need to be specifically cited in the complaint.  *See id.*  The main concern with such documents is notice to the plaintiff, but this is not an issue when the plaintiff has relied upon the document in drafting the complaint.  *See id.*  The Court may also take judicial notice of another court's record without converting to a summary judgment motion.  *See Pryor v. National Collegiate Athletic Assc.*, 288 F.3d 548, 560 (3d Cir. 2002).

The City Defendants' Appendix consists of police reports, interview transcripts, and Family Court orders.  (D.I. 20)  For the reasons stated below, the Court will consider all of these

documents without converting the motions to summary judgment.

### 1.     Police reports

The Court will consider the police reports included in the Appendix.  The Amended Complaint states that Plaintiff Doe had repeatedly contacted the WPD about his ex-wife's alleged misconduct.  (D.I. 15 at ¶¶ 30, 33, 35, 38)  Plaintiffs also rely on Quinn's police report, identified by date and case number in the Amended Complaint, for their defamation claim.  (*Id.* at ¶ 50)  The authenticity of the police reports is not reasonably in doubt.  Therefore, the Court will consider them in deciding the motions to dismiss.

### 2.     Interview transcripts

Plaintiffs also rely upon the interview transcripts for many of their allegations.  (*Id.* at ¶¶ 38-48)  These are integral to Plaintiffs' claims of alleged misconduct and breach of protocol.  Like the police reports, the authenticity of the transcripts are not in doubt.  For these reasons, the Court will also consider these transcripts.

### 3.     Family Court orders

Finally, the Court will consider the orders of the Family Court included in the Appendix, as it is appropriate to take judicial notice of such orders.

### B.     Supplemental Jurisdiction

As another initial matter, the Court must decide whether to exercise supplemental jurisdiction over the state law claims.  This is because, for reasons that are explained below, the Court will be dismissing the counts brought under 42 U.S.C. § 1983 (Counts III and V).  When a district court dismisses all of the claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining claims.  *See* 28 U.S.C. § 1367(c)(3).  This

is a "purely discretionary" decision. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Courts are guided in this analysis by the generally accepted principles of "judicial economy, convenience, and fairness to the litigants." *Growth Horizons, Inc. v. Delaware Cty.*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Here, it is appropriate to exercise supplemental jurisdiction and rule on the motions to dismiss the state law counts. These motions have been fully briefed and argued before the Court. Judicial economy, convenience, and fairness to the litigants all favor the Court resolving the issues before it. Moreover, the parties do not object to the Court's deciding the motions to dismiss these counts. (*See* Tr. 5, 15-16, 59-60)

For these reasons, the Court will retain supplemental jurisdiction over the state law counts and address the entirety of the motions to dismiss.

**C.     CAC's Motion (Counts II, VI, and VII)**

The court will grant the CAC's motion to dismiss.

**1.     Negligence**

"To state a claim for negligence one must allege that defendant owed plaintiff a duty of care; defendant breached that duty; and defendant's breach was the proximate cause of plaintiff's injury." *New Haverford P'ship v. Stroot*, 772 A.2d 792, 798 (Del. 2001). The Court finds that the CAC's alleged actions surrounding the interviews and the substantiation proceeding could not be the proximate cause of any injury claimed by Plaintiffs. Doe voluntarily surrendered custody rights at the Family Court hearing on September 13, 2013, more than a month before the CAC conducted its interviews. Plaintiffs argue that the CAC's actions were the proximate cause

7

of Doe's inability to change the custody arrangement. (D.I. 33 at 1-2)  This speculative allegation is insufficient to state a plausible negligence claim.

### 2.      Conspiracy to commit malicious prosecution

A claim for civil conspiracy under Delaware law requires: "(1) [a] confederation or combination of two or more persons; (2) [a]n unlawful act done in furtherance of the conspiracy; and (3) [a]ctual damage." *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987). Such a claim cannot be sustained without an independent underlying tort. *See Ramunno v. Cawley*, 705 A.2d 1029, 1039 (Del. 1998).

While Plaintiffs do not allege malicious prosecution against the CAC, they claim that it conspired with the other Defendants to maliciously prosecute Doe. (*See* D.I. 33 at 4)  Plaintiffs acknowledge that if the malicious prosecution claim is dismissed, the conspiracy claim against the CAC would lack the required underlying tort. (*See* Tr. at 64)  For the reasons discussed below, the malicious prosecution claim (Count III) will be dismissed. Accordingly, the conspiracy count will also be dismissed.[3]

### 3.      Breach of contract

Plaintiffs allege that a Memorandum of Understanding ("MOU") between the CAC, the WPD, and the State of Delaware is a contract, that Defendants breached that contract, and that

---

[3]Plaintiffs request leave to amend the Complaint to substitute civil aiding and abetting for civil conspiracy, and deprivation of civil rights for malicious prosecution as the alleged underlying wrong. (*See* Tr. at 63-64)  The Court will deny Plaintiffs' request. Although Fed. R. Civ. P. 15(a) "provides that leave to amend should be 'freely given,' a district court has discretion to deny a request to amend if it is apparent from the record that . . . the amendment would be futile." *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005). Plaintiffs' proposed amendments would not cure the pleading deficiencies of the Amended Complaint. Therefore, the Court will not grant Plaintiffs leave to again amend their Complaint.

Plaintiffs are entitled to damages as third-party beneficiaries. (D.I. 15 at ¶¶ 123-25)  But the MOU is merely a set of guidelines designed to aid the participating agencies in coordinating their efforts.  Plaintiffs allege no facts which permit a reasonable inference that the MOU is a contractual agreement supported by consideration.  Moreover, the MOU expresses no intention to compensate the public for any failure to perform the duties set forth in the MOU.  *See Pajewski v. Perry*, 363 A.2d 429, 431 (Del. 1976) (finding that alleged third-party beneficiaries had no standing to sue when no such intent was expressed by government entities in alleged contract); *see also Triple C Railcar Serv. v. City of Wilmington*, 630 A2d. 629, 633-34 (Del. 1993).  Plaintiffs' claim against all Defendants for breach of contract (Count VII) must be dismissed as a matter of law.

For these reasons, the Court will grant the CAC's motion to dismiss.

### D.     The City Defendants

The Court will also grant the City Defendants' motion to dismiss.

#### 1.     Wilmington Police Department (Counts I, III, V, and VII)

The WPD is an unincorporated department of the City of Wilmington and is not subject to suit. *See Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. Oct. 5, 2004) (holding that police department is administrative arm of its local municipality and not separate entity); *see also Morse v. New Castle Cty. Police Dep't*, 2007 WL 471182 (D. Del. Feb. 8, 2007). Accordingly, all counts against the WPD will be dismissed.  Moreover, because the Court will also dismiss all counts against the City, an amendment to the Complaint substituting the City for the WPD would be futile.

### 2.      City of Wilmington (Counts V and VII)

Plaintiffs argue that the City is vicariously liable for Quinn's actions, which they allege constitute malicious prosecution and deprivation of civil rights. (D.I. 15 at ¶ 67)  A municipality cannot be found liable for § 1983 claims on a theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Rather, a municipality may only be liable if an employee causes injury through the execution of a policy or custom. *See id.*  Such a municipal policy or custom is a constitutional violation only if it amounts to "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).  Deliberate indifference requires proof that a responsible municipal policymaker: (1) had contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents; and (2) failed to take adequate measures to ensure the constitutional right in question or otherwise communicated a message of approval to the offending subordinates. *See Montgomery v. DeSimone*, 159 F.3d 120, 127 (3d Cir. 1998).

Plaintiffs claim that without discovery, they cannot state with certainty whether the City's alleged conduct constitutes a single act or is part of a broader policy. (D.I. 27 at 5)  However, Plaintiffs must make factual allegations in their complaint permitting a plausible inference of such a policy before they can obtain discovery. *See Iqbal*, 556 U.S. at 678-79 ("[Rule 8] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Plaintiffs have alleged no facts to state a plausible claim for relief against the City.  Accordingly, all counts against the City will be dismissed.

### 3. Mary Quinn (Counts I, III, V, and VII)

#### a. Qualified immunity

Mary Quinn acted in her capacity as an employee of the City and the WPD.  She contends she is entitled to qualified immunity, which protects government officials performing discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In making a qualified immunity analysis, the Court must consider: (1) whether a plaintiff has alleged the deprivation of an actual constitutional right; and (2) whether the right was clearly established at the time of the alleged deprivation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  A court may examine these elements in any order. *See Pearson*, 555 U.S. at 242.  Because Plaintiffs were not deprived of any clearly established constitutional right, Quinn is entitled to qualified immunity.

Plaintiff Doe argues that he was deprived of his constitutional "right to the integrity of his family and the fellowship of his children." (D.I. 15 at ¶ 96)  However, "the right to familial integrity . . . does not include the right to remain free from child abuse investigations." *Croft v. Westmoreland Cty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997).

Plaintiff Doe consented to the transfer of full custody of his children to his ex-wife at the Family Court hearing on September 13, 2013. (D.I. 15 at ¶ 34; D.I. 20-4 at 73)  This occurred prior to Quinn's investigation.  Plaintiffs have stated no factual allegations to suggest that Quinn's involvement caused any change or denial of their constitutional rights.

Additionally, persons claiming constitutional violations by government officials must

11

prove conduct that "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The Court finds that Quinn's decision to allow a friend of Doe's ex-wife to attend her interview, apparently to help with her limited proficiency in English, does not amount to official conduct which shocks the conscience.

### b.    Malicious prosecution

Plaintiff Doe also alleges that Quinn's conduct led to malicious prosecution. (D.I. 15 at ¶¶ 91, 92, 96)

> To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009).

Plaintiffs argue that the substantiation proceeding interrupted Doe's efforts to regain custody of his children, and that this was a deprivation of liberty consistent with the concept of seizure. (D.I. 27 at 14) The Court disagrees. The proceeding did not deprive Doe of any constitutionally protected family right, as he had already voluntarily given custody of the children to his ex-wife.

The Court also finds that Quinn had probable cause to determine that the children's statements appeared to be coerced. She based her opinion on their comments indicating that they did not remember certain incidents until Doe told them, as well as statements by Doe and his ex-wife which did not support a finding that she had committed abuse. (D.I. 19 at 13-14) Quinn

also relied on the advice of Marlowe, a DFS employee familiar with the case, that Doe's reports were "questionable." (*Id.* at 14)

For these reasons, the Court finds that Doe was not deprived of a constitutionally protected right and that Quinn acted appropriately, without malice, and with probable cause. The Court finds that Quinn is entitled to qualified immunity and that Plaintiffs have not stated a plausible claim for malicious prosecution.

### c.     Defamation

Plaintiffs' defamation claim is based on Quinn's statement in a police report that Doe's "accusations are unsubstantiated and the children's statements appear coerced on the part of the father." (D.I. 20 at A-6)  The City Defendants argue that Quinn's statement was an opinion. (D.I. 19 at 9)  The Court agrees.

Whether a statement is one of fact or opinion is a question of law, and courts evaluate statements from an ordinary reader's perspective. *See Riley v. Moyed*, 529 A.2d 248, 251 (Del. 1987).  This analysis consists of four factors: (1) the statement's common usage or meaning; (2) whether it can be objectively verified as true or false; (3) the statement's full context; and (4) the statement's broader social context. *See id.* at 251-52.

Applying this standard to Quinn's statement, the Court finds that it was an expression of her opinion.  The words "appear coerced" indicate that Quinn was describing her belief about the veracity of the children's statements, based on her investigation and the content of the interviews. The statement cannot be objectively verified, short of Doe admitting to the alleged coercion. Finally, it was made in the context of a police investigation.  The Court thus finds that Quinn's statement in the police report was her opinion.

An opinion can be a defamatory statement only if it implies that it is based on undisclosed facts. *See Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985). "When an opinion is accompanied by its underlying nondefamatory factual basis, a defamation action premised upon that opinion will fail no matter how unjustified, unreasonable or derogatory the opinion might be." *Riley*, 529 A.2d at 254. Here, Quinn's opinion was based on readily available facts, namely the interviews with Doe, his ex-wife, and the children. Therefore, the Court is satisfied that Quinn's statement expressed an opinion, based upon disclosed facts, that is not actionable on a defamation claim. Accordingly, all counts against Quinn will be dismissed.

For these reasons, the City Defendants' motion to dismiss will be granted.

### D.     The State Defendants

The Court will also grant the State Defendants' motion to dismiss.

#### 1.     DFS (Counts I, III, IV, V, and VI)

The Eleventh Amendment renders states "immune from suits brought in federal courts by [their] own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Federal courts are thus limited in their ability "to entertain lawsuits against a State and, in the absence of congressional abrogation or consent, a suit against a state agency is proscribed." *Neeley v. Samis*, 183 F. Supp. 2d 672, 678 (D. Del. 2002); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). Congressional abrogation of state immunity from suit requires a clear indication of Congressional intent. *See Neeley*, 183 F. Supp. 2d at 678. This clear indication is lacking in 42 U.S.C. § 1983, which provides a cause of action against "persons," not "states." *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Nor has the State of Delaware waived its Eleventh Amendment immunity. *See*

*Brooks-McCollum v. Delaware*, 213 Fed. App'x 92, 94 (3d Cir. 2007); *see also Buchanan v. Gay*, 491 F. Supp. 2d 483, 493 (D. Del. 2007). Therefore, the DFS is immune from Plaintiffs' § 1983 claims. Accordingly, Counts III and V will be dismissed with respect to the DFS.

The DFS is also immune from Plaintiffs' state-law claims. The State Defendants have not consented to this suit. Accordingly, as the Delaware Supreme Court has held, sovereign immunity applies "unless there is a statute by which the General Assembly can be said to have waived the defense." *Doe v. Cates*, 499 A.2d 1175, 1176-77 (Del. 1985). The Delaware General Assembly has not waived sovereign immunity for purposes of claims like those asserted by Plaintiffs. *See id.* at 1179-80 (holding that sovereign immunity was not waived through enactment of State Insurance Act, 18 Del. C. § 6511); *see also* D.I. 23 at 9 ("The General Assembly has only waived the defense of sovereign immunity as to those risks specifically covered by the State Insurance Coverage Program."); *Doe v. Doe*, 499 A.2d at 1180. For these reasons, Counts I, IV, and VI will also be dismissed with respect to the DFS.

## 2. Sarah Marlowe (Counts I, II, III, IV, V, and VII)

Sarah Marlowe acted in her capacity as an employee of the DFS. Plaintiffs' claim against Marlowe is primarily based on her allegedly perjured affidavit, submitted on behalf of Doe's ex-wife in the divorce proceeding. The State Defendants argue that as a fact witness she is entitled to absolute testimonial immunity. (*see* D.I. 23 at 7-8) Certain governmental functions require immunity from civil liability in order to operate "with independence and without fear of consequences." *Rehberg v. Paulk*, 132 S. Ct. 1497, 1503 (2012) (internal quotation marks omitted). This includes absolute immunity for witnesses in judicial proceedings, which the Supreme Court has held is not undermined by § 1983. *See Briscoe v. Lahue*, 460 U.S. 325, 326,

345-46 (1983).  The Court thus finds that Marlowe is entitled to absolute immunity for her testimony as a fact witness in the divorce proceeding.

To the extent that Marlowe acted in her official capacity as an employee of the State of Delaware, she is immune from Plaintiffs' claims for the same reasons that apply to the DFS.  *See Rodriguez v. Stevenson*, 243 F. Supp. 2d 58, 63 (D. Del. 2002) (holding that state immunity extends to DFS and its officials acting in official capacities).  To the extent that Marlowe acted in her individual capacity, she is not immune under the Eleventh Amendment or sovereign immunity.  However, Plaintiffs' allegations are based on Marlowe's alleged conduct during the course of her duties as a child welfare worker.  Consequently, she may enjoy other types of immunity, even assuming Plaintiffs are asserting (and can prove) she acted in her individual capacity.  *See Kentucky v. Graham*, 473 U.S. 159, 166-167 (1985) (explaining absolute immunity and qualified immunity are defenses available to government officials sued in their individual capacities).  Child welfare workers have absolute immunity "for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings . . . [which is] broad enough to include the formulation and presentation of recommendations to the court in the course of such proceedings." *Ernst v. Child & Youth Servs. of Chester County*, 108 F.3d 486, 495 (3d Cir. 1997).  This immunity is based on the idea that the functions of child welfare workers are analogous to those performed by prosecutors, who were immune from suit at common law.  *See id.* at 493-94.

Even assuming that all of the actions undertaken by Marlowe are subject only to qualified immunity, she is immune, for the same reasons stated above with respect to Quinn.  Plaintiffs have not stated a plausible claim that Marlowe acted either with malice or without probable

16

cause.  Further, as discussed above, Plaintiffs have not alleged facts sufficient to permit a reasonable inference that Doe suffered a deprivation of liberty consistent with the concept of seizure from the substantiation proceeding.

For the reasons stated above, all counts against Marlowe will be dismissed.

### 3.    Bahu Gilliam (Counts V and VII)

Bahu Gilliam acted as Marlowe's supervisor at the DFS.  Plaintiffs have not alleged facts permitting a reasonable inference of any personal involvement by Gilliam in the substantiation proceeding, or any actions that deprived Plaintiffs of any constitutional rights.  The Amended Complaint only alleges liability for Gilliam under the theory of *respondeat superior*, which is not a permissible basis for liability for a subordinate's alleged unconstitutional conduct.  *See Iqbal*, 556 U.S. at 676.  Gilliam is also entitled to qualified immunity, for the reasons stated above with respect to Quinn and Marlowe.  Plaintiffs have not pled sufficient factual allegations to allow a reasonable inference that Gilliam acted with malice or without probable cause.  Accordingly, all counts against Gilliam will be dismissed.

For these reasons, the State Defendants' motion to dismiss will be granted.

## V.    CONCLUSION

For the reasons stated above, the Court will grant all three motions to dismiss.  An appropriate Order follows.